UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PHILLIP J. WRIGHT, | § | |
| *Plaintiff,* | § | CIVIL ACTION |
| | § | |
| VS. | § | CASE NO.: _____ |
| | § | |
| UNION PACIFIC RAILROAD | § | JURY TRIAL REQUESTED |
| COMPANY, | § | |
| *Defendant.* | § | |

## ORIGINAL COMPLAINT

The Plaintiff, PHILLIP J. WRIGHT, brings this Complaint against the Defendant, UNION PACIFIC RAILROAD COMPANY, for violations of the Federal Rail Safety Act, 49 U.S.C. § 20109, and would show as follows:

### I.    PARTIES

1.     The Plaintiff, Phillip J. Wright is a natural person and citizen of Chambers County, Texas.

2.     The Defendant, Union Pacific Railroad Company ("UPRR" or "Union Pacific"), is a railroad carrier providing railroad transportation throughout Texas and other states, with a usual place of business in Houston, Texas. The designated agent for service of process is through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

1

## II.    STATUTORY AUTHORITY, JURISDICTION, AND VENUE

3.    Jurisdiction in the United States District Court for the Southern District of Texas, Houston Division, is proper pursuant to the Federal Railroad Safety Act (FRSA), 49 U.S.C. Section 20109(d)(3).

4.    Venue is proper in the United States District Court for the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

## III.    STATEMENT OF FACTS

**The Ongoing Problem with Retaliation in Whistleblower Cases**

5.    In FY2023, there were 3,243 total docketed cases received by OSHA relating to whistleblower violations.[1] For all of the FY2023 docketed cases received, at least 134 of them were specifically related to violations of the Federal Rail Safety Act (FRSA).

6.    In that same year, there were 3,649 docketed cases completed, of which 177 were specifically related to violations of the FRSA. [2]

7.    FRSA cases make up the third-most docketed cases out of all of the potential whistleblower claims from various industries.

---

[1] https://www.whistleblowers.gov/factsheets_page/statistics/FY2023

[2] *Id.* at p. 2.

8.    As recently as August 5, 2025, Union Pacific Railroad was found to be a "serial violator" of the Federal Railway Safety Act.[3]

**The Purpose of the Law**

9.    The purpose of the Federal Rail Safety Act is to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents. 49 U.S.C. § 20101.

10.    The federal anti-retaliation laws primary objectives are preventative in nature, primarily aimed to deter and avoid harm.

11.    Employers who do not make good faith efforts to prevent retaliation in the workplace may be liable for punitive damages, which is intended to deter such retaliatory violations.

12.    The right to expect that corporations will not retaliate against employees who engage in protected activity is essential to our community.

**Union Pacific Operates Across Most of the Nation**

13.    Defendant, Union Pacific, is one of the largest railroad carriers in the United States and is a publicly traded corporation.

14.    The Defendant operates approximately 8,300 locomotives over 32,200 miles of track in 23 US states.

---

[3] https://www.osha.gov/news/newsreleases/dallas/20250806 and August 5, 2025 Letter by Michael Mabee, Assistant Regional Administrator, Whistleblower Protection Program, with copy to Chief Administrative Law Judge, in Case: *Union Pacific Railroad Company, et al / Garza / 301037983*, at page 6.

15.    The Defendant employs over 32,000 people (in 2021), with an annual payroll in excess of $3,000,000,000.

16.    During all times herein mentioned, the Defendant Railroad carrier was engaged in interstate commerce by providing railroad transportation in, around, and through Texas and the surrounding states.

**Union Pacific's Written Policy Versus Practice**

17.    The UPRR claims to have a "Non-Retaliation" policy that encourages its employees to report incidents without fear of retaliation.[4]

18.    The Union Pacific claims to "not tolerate any form of retaliation against employees for reporting a personal injury or illness."[5]

19.    Union Pacific acknowledges that the FRSA prohibits the Defendant from retaliating against an employee who engages in protected activity, including the reporting of a work-related injury.[6]

NON-RETALIATION POLICY

Remember that ethical violations can be reported in confidence and without fear of retaliation. The Company does not tolerate any kind of retaliation.  Employees must not retaliate against any other employee that reports, in good faith, what he or she believes is a violation of law, rule, regulation, or the Policy.

Examples of retaliation include:
- Transferring to a less desirable position
- Giving a negative performance review
- Firing or suspending
- Coercing or punishing an employee in any other way

---

[4]https://www.up.com/cs/groups/public/@uprr/@law/documents/up_pdf_nativedocs/pdf_e_exec_conduct_howmatters.pdf at p. 6.

[5] *Id*. at p. 7.

[6] Union Pacific FRSA Whistleblower Policy.

20.    In practice, however, the Union Pacific targets employees who have had previous reportable injuries and/or report safety concerns.

**Union Pacific's Retaliation Against Mr. Wright.**

21.    During all times relevant to this Complaint, the Defendant Railroad carrier engaged in interstate commerce by providing railroad transportation in, around, and through Texas and the surrounding states.

22.    At the time of the Defendant's FRSA violations, Phillip Wright was employed by the Defendant Railroad as a conductor and qualified as an employee within the meaning of 49 U.S.C. 20109.

23.    Phillip Wright began working as a conductor for the Union Pacific in 2005 and had almost 20 years of service at the time of the FRSA violation.

24.    In November 2024, Phillip Wright suffered a work-related injury that prevented him from returning to work for several weeks.

25.    After being released to work, in February 2025, Mr. Wright was in a training class when a general manager, Brian McGavock, after discussing Mr. Wright's injury, made a comment to the class that, "if I know your name, it's not good."

26.    Mr. Wright continued to work for the Union Pacific until April 12, 2025.

27.    On that day, Wright was assigned to pull hazardous railcars from a Rail Logix facility, but some railcars on the track were not properly billed to his train (marked as "CU" - Customer Exception status).

28.    There were 64 cars on the track, but only 48 appeared on Wright's train list. Many of these cars were carrying hazardous material.

29.    The train route that Mr. Wright was assigned to take would pull the train through neighborhoods and public crossings. Wright was concerned about regulatory compliance with hazmat transportation, and safety for the general public, as there had been three previous derailments in this area.

30.    Wright contacted the Conductor Help Desk at 6:43 AM, who advised him to either contact the manager on duty or the shipper to release the cars, stating they should not be pulled without proper release and documentation.

31.    Wright called Manager Cliff McAdams at 6:50 AM to explain the situation and his safety concerns.

32.    McAdams instructed Wright to train set the billed cars and print an "RD" (Request for hazardous Documents) for unbilled cars.

33.    Wright expressed concerns about pulling a "key train" (containing hazardous materials) through neighborhoods without complete paperwork.

34.    Wright asked McAdams to sign off on the movement, which McAdams refused.

35.    Wright also spoke with Superintendent Chad Clark, emphasizing he was not refusing to pull the train but wanted proper documentation, as required by federal regulation.

36.    McAdams and/or Clark removed Wright from service without further discussion.

37.    The Defendant carrier knows that certain federal regulations covering the movement of hazardous railcars require very specific documentation and records in case of a derailment or other security concerns. *See* 49 C.F.R. § 174, *et. seq.*

38.     On April 21, 2025, Wright received a charge letter regarding a "Notice of Investigation" alleging that he violated several General Code of Operating Rules (GCOR).

> On 04/12/2025, at the location of Baytown, TX, near Milepost 3.5, Cedar Bayou Industrial Lead Subdivision, it is alleged you failed to comply with instructions from manager on duty when instructed to use approved hazmat documents, resulting in the delay of 4 trains.. Be advised, your personnel records may be reviewed at the Hearing. This is an alleged violation of the following rule(s) and/or policy(s):
> 1.6: Conduct - Insubordinate
> 1.6: Conduct - Quarrelsome
> 1.6: Conduct - Negligent
> 1.13: Reporting and Complying with Instructions

39.     A hearing was held on June 26, 2025, where Mr. Wright and his union representative attempted to explain the concerns and objections to charging Mr. Wright with a rule violation for simply expressing a safety violation or concern, in good faith.

40.     On July 3, 2025, Mr. Wright was notified that he was being "dismissed from all service with Union Pacific Railroad."

> After careful consideration of the evidence presented at the hearing, I find the charges against you have been substantially supported by the evidence presented and are upheld for violation of the following rules and/or polices:
> 1.6: Conduct - Insubordinate
> 1.6: Conduct - Quarrelsome
> 1.6: Conduct - Negligent
> 1.13: Reporting and Complying with Instructions
>
> You are hereby dismissed from all service with Union Pacific Railroad. Immediately arrange to deliver all Company property in your possession to Blake Powers.

## IV.    FRSA CAUSES OF ACTION

## Count 1 - Violation of 49 U.S.C. § 20109(a)(2)

41.    Plaintiff realleges all of the above allegations set forth in this Complaint.

42.    Mr. Wright engaged in protected activity under the FRSA when he notified the carrier of his refusal to violate or assist in violation of a Federal law, rule, or regulation relating to railroad safety, when he questioned whether the train should have been pulled out of the yard without the properly billed hazardous railcars and documentation. 49 U.S.C. § 20109(a)(2).

43.    More specifically, Mr. Wright was pulled from service when he questioned whether it would be safe or proper to pull the hazardous railcars that were not identified on his train list and had not been released, and when he was following the instructions of the Conductor Help Desk and the Defendant Railroad's operating and/or safety rules.

44.    The Defendant Railroad had knowledge of all the protected activities referenced above.

45.    The FRSA provides that an employer may not "discharge, demote, suspend, reprimand, or in any other way discriminate" against an employee for engaging in protected activity, if such discrimination is due, in whole or in part, to the employee's lawful, good faith act. Under the FRSA, an adverse action includes any action that might dissuade a reasonable employee from engaging in FRSA-protected activity.

46.    The Defendant Railroad took adverse or unfavorable actions against Mr. Wright, in whole or in part, due to his protected activities when it pulled Wright from

service and terminated him, characterizing him as "insubordinate, quarrelsome, negligent, and failing to report or comply with instructions," despite Mr. Wright's good faith concern of safety and federal regulatory requirements.

47. The FRSA-protected activity performed by Mr. Wright was a contributing factor, in whole or in part, in the decision by the Defendant Railroad to take the adverse action against Mr. Wright.

48. In so doing, the Defendant Railroad acted with reckless disregard for the law and with complete indifference to the Mr. Wright' rights under the FRSA.

### Count 2 - Violation of 49 U.S.C. § 20109(b)(1)(A)

49. Plaintiff realleges all of the above allegations set forth in this Complaint.

50. Mr. Wright engaged in protected activity under the FRSA when he reported, in good faith to the carrier, a hazardous safety or security condition. More specifically, Mr. Wright reported that his train list was incomplete and some of the hazardous railcars that the Defendant Railroad wanted Mr. Wright to pull had not been properly billed, released, and or documented, and that Mr. Wright had been instructed by the Conductor Help Desk to not pull the subject hazardous railcars.

51. The Defendant Railroad had knowledge of all the protected activities referenced above and requirements of the federal regulations, including but not limited to 49 C.F.R. 174, *et seq.*

52. The FRSA provides that an employer "shall not discharge, demote, suspend, reprimand, or in any other way discriminate" against an employee for "reporting, in good faith, a hazardous safety or security condition."

53.     The Defendant Railroad took adverse or unfavorable actions against Mr. Wright, in whole or in part due to his protected activities, when it pulled Wright from service and terminated him, characterizing him as "insubordinate, quarrelsome, negligent, and failing to report or comply with instructions," despite Mr. Wright's good faith concern of safety and federal regulatory requirements. Under the FRSA, an adverse action includes any action that might dissuade a reasonable employee from engaging in FRSA-protected activity.

54.     The FRSA-protected activity performed by Mr. Wright was a contributing factor, in whole or in part, in the decision by the Defendant Railroad to take the adverse action against Mr. Wright.

55.     In so doing, the Defendant Railroad acted with reckless disregard for the law and with complete indifference to the Mr. Wright' rights under the FRSA.

56.     Alternatively, while Mr. Wright believes he never specifically refused to pull the subject train, if the Defendant claims that he did refuse to pull the subject train and railcars then Mr. Wright alleges that the Defendant Railroad violated 49 C.F.R. 20109 (b)(2) in that any action by Mr. Wright that the Defendant interprets as a refusal was done in good faith, without a reasonable alternative. Furthermore, pulling a hazardous train through local neighborhoods where prior trains had previously derailed presents an imminent danger of death or serious injury and the urgency of such a situation could not be eliminated without such refusal.

## Count 3 - Violation of 49 U.S.C. § 20109(a)(4)

57.    Plaintiff realleges all of the above allegations set forth in this Complaint.

58.    Mr. Wright engaged in protected activity under the FRSA when he notified the carrier of his work-related personal injury.

59.    It is believed, based on the manager's comments, that the railroad may have taken this action because Mr. Wright previously reported an on-the-job injury. Such adverse action is a violation of 49 U.S.C. § 20109(a)(4).

60.    The Defendant Railroad had knowledge of all the protected activities referenced above.

61.    The FRSA provides that an employer may not "discharge, demote, suspend, reprimand, or in any other way discriminate" against an employee for engaging in protected activity, if such discrimination is due, in whole or in part, to the employee's lawful, good faith act. Under the FRSA, an adverse action includes any action that might dissuade a reasonable employee from engaging in FRSA-protected activity.

62.    The Defendant Railroad took adverse or unfavorable actions against Mr. Wright, in whole or in part due to his protected activities, when it pulled Wright from service and terminated him, characterizing him as "insubordinate, quarrelsome, negligent, and failing to report or comply with instructions," despite Mr. Wright's good faith reporting of a work-related injury.

63.    The FRSA-protected activity performed by Mr. Wright (reporting the work-related injury) was a contributing factor, in whole or in part, in the decision by the Defendant Railroad to take the adverse action against Mr. Wright.

64. In so doing, the Defendant Railroad acted with reckless disregard for the law and with complete indifference to the Mr. Wright' rights under the FRSA.

## V.   CONDITIONS PRECEDENT

65. On September 30, 2025, within 180 days from the date the Plaintiff became aware of the Defendant Railroad's intent to take adverse or unfavorable personnel action against him, Mr. Wright filed a FRSA Complaint with the Secretary of Labor's OSHA Whistleblower Office.

66. The Department of Labor has not issued a final decision within 210 days after the filing of the Plaintiff's FRSA Complaint. The delay was not due to any bad faith on the part of the Plaintiff.

67. Pursuant to 49 U.S.C. 20109(d)(3) of the FRSA, Mr. Wright has a statutory right to bring an original action in the United States District Court for a jury trial regarding the Defendant Railroad's violation of the FRSA.

68. Mr. Wright is now bringing this original action at law and equity for de novo review by the United States District Court Southern District of Texas, Houston Division, which has jurisdiction over this FRSA action without regard to the amount in controversy.

## VI.   DAMAGES

69. In order to encourage employees to freely report hazards and work-related injuries without fear of any retaliation, thereby ensuring the Federal Rail Administration has the necessary information to develop and administer an effective rail safety regulatory program that promotes safety in every area of our nation's

12

railroad operations, the Plaintiff is entitled to all relief necessary to make him whole under the FRSA, including but not limited to:

    a. Reinstatement with the same seniority status that Plaintiff would have had, but for the discrimination;

    b. Lost fringe benefits with interest;

    c. Lost wages and/or backpay with interest;

    d. Compensatory damages for economic losses due to Defendant's conduct;

    e. Compensatory damages for mental anguish and emotional distress due to Defendant's conduct;

    f. The statutory maximum of punitive damages;

    g. Removal from Mr. Wright's record any reference to the discipline and investigation; and

    h. Special damages for all costs, expert witness fees, and reasonable attorney fees.

## VII.   JURY REQUEST

70.   Plaintiff demands a jury trial.

## VIII.  REQUEST FOR RELIEF

71.   By reason of the above, Plaintiff seeks damages under the FRSA, 49 U.S.C. § 20109, and asks that Defendant Railroad be cited according to law to appear and Respond to this Complaint and, after final trial, award Plaintiff all relief to which Plaintiff may be entitled, including the following:

    a. Judgment for all of Plaintiff's actual damages;

13

b.  Judgment for interest in the highest amount allowed by law;

c.  Judgment for court costs; and

d.  Such other relief to which Plaintiff may be entitled.

Dated: June 10, 2026.                     Respectfully submitted,

**ROVEN CAMP, PLLC**


By: _/s/ Kevin M. Camp_
        Kevin M. Camp
        Texas Bar No. 24064996
        Fed. Id. No. 1092986
        Che Bonner-Walton
        Texas Bar No. 24136351
        Fed. Id. No. 3935224
        550 Westcott St., Suite 305
        Houston, Texas 77007
        Tel: (713) 465-8522
        Fax: (713) 465-3658
        kcamp@rovencamp.com
        cbonnerwalton@rovencamp.com

**ATTORNEYS FOR PLAINTIFF**